```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA
                       Alexandria Division

WILLIAM HAWKINS, et al.,          )
                                  )
      Plaintiffs,                 )
                                  )
      v.                          )      1:05cv1256
                                  )
LASZLO BORSY, et al.,             )
                                  )
      Defendants.                 )
```

## MEMORANDUM OPINION

On September 15, 2006, a magistrate judge issued a Report and Recommendation ("Report") (docket #82) in which he recommended that default judgment, including monetary damages and injunctive relief, be entered in favor of plaintiffs William Hawkins ("Hawkins"), Eric Keller ("Keller"), Thomas Zato ("Zato"), Kristof Gabor ("Gabor"), and Justin Panchley ("Panchley"), collectively the "plaintiffs," against defendants Laszlo Borsy ("Borsy"), Mediaware Corp. ("Mediaware"), MediaTechnik Kft. ("MediaTechnik"), DMCC Kommunikacios Rt. ("DMCC"), and Peterfia KFT. ("Peterfia"), collectively the "defendants," jointly and severally.  The parties were advised that any exceptions to the Report had to be filed within ten days of receipt of the Report and that failure to file a timely exception waived appellate review of any judgment based on the Report.  This matter comes before the Court on defendant Borsy's numerous objections.

For the reasons stated below, Borsy's objections are

insufficient to undermine the findings and conclusions of the Report, which is fully accepted by this Court.  For the reasons stated in the Report and this Memorandum Opinion, the recommended default judgment will be entered against the defendants, jointly and severally.[1]

PROCEDURAL HISTORY

Plaintiffs brought this civil action against the defendants and Sam Black ("Black") on October 31, 2005, alleging four counts of common law fraud; two counts of breach of contract; one count of conversion; one count of breach of fiduciary duties (solely against Borsy); one count of unjust enrichment; and requesting declaratory relief and an accounting of certain financial transactions.  Service was validly effected on all of the defendants.  Black timely responded to the complaint on December 21, 2005.[2]  On February 10, 2006, three days after a responsive pleading was due from Borsy, MediaTechnik, DMCC, and Peterfia,[3]

---

[1] Defendants Mediaware, MediaTechnik, DMCC, and Peterfia did not file any objections to the Report, and could not because they have not retained qualified counsel to represent them. Accordingly, default judgment will be entered against these defendants as well, in accordance with the findings of the Report.

[2] Black was subsequently dismissed by stipulation of the parties on June 22, 2006.  Accordingly, he is not subject to any of the plaintiffs' motions for default.

[3] Borsy, MediaTechnik, DMCC, and Peterfia were served on January 18, 2006, and a responsive pleading was due by February 7, 2006.

2

and nearly three months after a response was due from Mediaware,[4] the Court received four documents from the defendants that appeared to be written in Hungarian; all of these documents were signed by Borsy, pro se.  Because the documents were not in English, the Court ordered that they be stricken from the record unless an English translation was provided within eleven days.[5]  On March 6, 2006, having received no translations from the defendants, the documents were stricken from the docket.  On March 8, 2006, the plaintiffs filed a request for entry of default.  The Clerk entered default on March 13, 2006.

On April 14, 2006, counsel for the defendants entered their appearance and the Court granted their motion to set aside the entry of default.  On May 5, the Court denied defendants DMCC and Peterfia's motion to dismiss for lack of personal jurisdiction.  Shortly thereafter, counsel for the defendants filed a motion to withdraw on the grounds that the defendants refused to pay for the legal services rendered on their behalf.  By an order entered on May 19, counsel was allowed to withdraw and the corporate and entity defendants were advised that they had eleven days to

---

[4] Mediaware was served on November 3, 2005, and a responsive pleading was due by November 23, 2005.

[5] See Rivas-Montano v. United States, 2006 WL 1428507, at *1 (M.D. Fla. May 22, 2006) ("'It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.'") (quoting United States v. Rivera-Rosario, 300 F.3d 1, 5 (1st Cir. 2002)).  A copy of this slip opinion is attached.

obtain new counsel or be in default.[6]  Borsy was ordered to advise the Court within eleven days as to whether he would proceed pro se or obtain new counsel.  All of the defendants were also warned that they would be deemed in default if they did not comply with the plaintiffs' outstanding discovery requests.

Defendants failed to comply with the May 19 Order and plaintiffs subsequently filed another motion for entry of default.  On June 2, 2006, the Court ordered the defendants to show cause within eleven days as to why default should not be entered against them.  On June 15, having received no response to the show cause order, the Clerk was directed to enter default against the defendants.  The default was entered that day, and a hearing for ex parte proof of damages before a magistrate judge was scheduled for July 7, 2006.[7]  No one appeared at the hearing on behalf of the defendants.

On September 15, 2006, the magistrate judge issued the Report, which recommended that default judgment be entered

---

[6] The  defendants were advised at this time that a corporate defendant cannot proceed pro se.  See Order, May 19, 2006 (citing Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 195 (1993) ("[T]he law permits corporations . . . and other artificial entities . . . to appear in federal courts only through licensed counsel.")).

[7] On the same day as the hearing, the plaintiffs submitted signed declarations outlining their damages.  Many of the declarations included documentation supporting their assertions.  For example, attached to Keller's declaration was a copy of the e-mail setting forth the terms of his employment.  See Declaration of Eric Keller, Ex. B (docket #77).

against the defendants pursuant to Fed. R. Civ. P. 55(b)(2).  On September 28, 2006, the Court received a letter from Borsy requesting that he be given a 30-day extension in which to file his objections to the Report.  The request was granted to the extent that it was a request from Borsy individually; however, no extension was granted as to the corporate and entity defendants. The Court subsequently received a faxed copy of Borsy's objections.  Because the Court does not accept faxed pleadings, the Court ordered Borsy to file an original signed pleading within ten days, which he submitted shortly thereafter.  On October 31, 2006, the plaintiffs requested entry of judgment. Nine days later the Court ordered the plaintiffs to respond to Borsy's objections, which they did on November 21, 2006.

DISCUSSION

A.   Standard of Review

 A party may file written objections to a magistrate judge's findings and recommendations within ten days after being served with a copy thereof.  28 U.S.C. § 636(b)(1).  Any written objections must specifically identify the portions of the Report to which objections are made and the basis for such objections. See Keeler v. Pea, 782 F. Supp. 42 (D.S.C. 1992); Marsden v. Moore, 847 F.2d 1536 (11th Cir. 1988).  "Frivolous, conclusive or general objections need not be considered by the district court." Id. at 1548.  Moreover, "[a]n 'objection' that does nothing more

than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). If proper objections are made, a district court will review the objections de novo. 28 U.S.C. § 636(b)(1).

Moreover, a default should be set aside when "the moving party acts with reasonable promptness and alleges a meritorious defense." Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp., 383 F.2d 249, 251 (4th Cir. 1967) (citing 6 MOORE'S FEDERAL PRACTICE ¶55.10(1)-(4), pp. 1829-1842 (2d ed. 1966)). "[A] 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) (citing Hutton v. Fisher, 359 F.2d 913, 913 (3d Cir. 1966)).

B.  Jurisdiction

The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, in that the plaintiffs and defendant Mediaware are citizens of different states and the remaining defendants are citizens or subjects of a foreign

country, and the amount in controversy exceeds $75,000.[8] Personal jurisdiction over the defendants is appropriate pursuant to Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this judicial district and division.

C.   Summary of Evidence

According to sworn declarations provided by each of the plaintiffs, Borsy approached Hawkins in 2001 and solicited him to invest in MediaTechnik, a Hungarian company then wholly-owned by Borsy.  In 2002 and 2003, Hawkins invested more than $330,000 in MediaTechnik in return for 35% of MediaTechnik's stock and 33.33% of Peterfia's stock.  Borsy owned the remaining 65% of MediaTechnik's stock, while the remaining 66.66% of Peterfia's stock was owned by Borsy and his mother.

In 2003, Borsy approached Hawkins about making an additional $1 million investment in a "roll up" transaction, in which MediaTechnik would either be merged into a new company named Mediaware or would become a wholly-owned subsidiary of Mediaware,

---

[8] Plaintiff Hawkins is an individual citizen of Florida, Zato is an individual citizen of California, and Keller, Gabor and Panchley are individual citizens of Virginia.  Defendant Borsy is a Hungarian citizen.  Defendant Mediaware is a Delaware holding corporation whose principal place of business has been located in Debrecen, Hungary since October 2004.  Before October 2004, Mediaware's principal place of business was located in Vienna, Virginia.  Defendant MediaTechnik is a Hungarian corporation that is a wholly-owned subsidiary of Mediaware. Defendants DMCC and Peterfia are Hungarian corporations.

and MediaTechnik would become the sole owner of Peterfia and DMCC. Under the terms of the proposed roll up, Hawkins' $1 million investment would be used to buy 100% of DMCC's shares and to fund the operating costs of the combined companies.

After a series of negotiations, Hawkins and Borsy agreed that in exchange for his additional $1 million investment, Hawkins would receive a 49% ownership interest in MediaTechnik and, through the roll up transaction, own 49% of Mediaware, DMCC, and Peterfia. For tax purposes, the transaction was structured as a $250,000 investment in MediaTechnik and a $750,000 loan to MediaTechnik. Pursuant to this agreement, Hawkins transferred $1 million in six separate wire transfers in the amounts and into the accounts directed by Borsy.

Borsy, however, diverted the funds provided by Hawkins. He used a portion of the funds to purchase the other 50% interest in DMCC, thereby becoming DMCC's sole owner. Borsy then transferred the remaining funds to DMCC. Neither MediaTechnik nor Mediaware acquired a 100% ownership interest in DMCC, nor did DMCC convey 49% of its stock to Hawkins. Hawkins also did not receive a 49% direct or indirect ownership interest in Peterfia as contemplated by the agreed roll up transaction.

Additionally, Borsy and Mediaware prepared a "Stockholders Agreement" in 2003 without Hawkins' knowledge or consent, which purported to grant Borsy the power to vote all of Hawkins' shares

of Mediaware stock.  This otherwise incomplete Stockholders Agreement contained a forged signature purporting to be that of Hawkins.  Borsy and Mediaware have used the Stockholders Agreement to deprive Hawkins of his right to vote his shares in Mediaware and have undertaken actions without affording Hawkins an opportunity to vote.

While Borsy was soliciting Hawkins' investment, he also induced plaintiffs Keller, Gabor, Zato, and Panchley to provide services to MediaTechnik and/or Mediaware as employees or contractors in return for an ownership interest in the rolled up companies.

In June 2003, Borsy, acting as the agent of the combined companies, offered to pay Keller $250,000 in salary, plus an 8% equity stake in the combined companies.  Borsy also represented that MechiaTechnik already owned DMCC and that as part of the roll up transaction, Mediaware would own, directly or indirectly, 100% of Mediatechnik, DMCC, and Peterfia.  Keller worked for Mediaware from July 1, 2003, through October 21, 2004, when Borsy unilaterally terminated the employment.  Keller was never paid the $300,000 in salary or the $360,000 in severance payments owed to him under the employment agreement.  Moreover, Mediaware has not tendered to Keller the stock of the combined companies as provided for in the employment agreement.

Borsy also met with plaintiff Gabor and recruited him to

join the combined companies as the Chief Operating Officer in June 2003.  On July 15, 2003, Borsy, acting as an agent for MediaTechnik/Mediaware, entered into a consulting agreement with Gabor that provided that MediaTechnik would pay Gabor $120,000 per year, plus benefits in exchange for his services.  Borsy and Gabor further agreed that Gabor would be entitled to 3% of Mediaware's shares, to be vested over a period of four years.  In November of 2003, Borsy increased Gabor's stock grant to 5% of Mediaware's shares as a performance bonus.  Borsy also represented to Gabor that his ownership interest in Mediaware would correspond to an equal ownership interest in MediaTechnik, DMCC, and Peterfia as a result of the roll up transaction.  Gabor worked from July 21, 2003, through October 22, 2004, when he resigned.  Gabor was never paid the $130,316.21 in salary or the $16,446.90 in health insurance costs and business expense reimbursements owed to him under the agreement.  Moreover, Mediaware also failed to tender to Gabor the stock due to him.

In December of 2002, Borsy approached plaintiff Zato on behalf of the combined companies and recruited him to be the Vice President of Systems Engineering.  On February 16, 2003, Borsy offered Zato $160,000 per year, plus benefits, in exchange for his consulting services to MediaTechnik.  Borsy and Zato further agreed that Zato would be entitled to 64,000 shares of Mediaware stock, to be vested over a period of four years.  Zato accepted

the offer of employment and began work on March 1, 2003.  Within months, MediaTechnik breached the employment agreement by failing to pay Zato his salary.  When Zato threatened to leave the company, Borsy induced him to stay by offering to increase the amount of Mediaware stock that Zato was to receive to 92,000 shares.  Borsy further induced Zato to stay by representing to Zato that his ownership interest in Mediaware would correspond precisely to an equal ownership interest in MediaTechnik, DMCC, and Peterfia as a result of the proposed roll up transaction. Zato continued in his position through May 31, 2004, but was never paid the $140,131.95 in salary owed to him under the agreement reached with Borsy.  Moreover, Mediaware also failed to tender to Zato a 2.06% interest in the rolled-up companies pursuant to the agreement.

 In February of 2003, Borsy also recruited plaintiff Panchley, who had previously worked for MediaTechnik, to join the combined companies.  Borsy offered Panchley a salary of $72,000 per year, plus benefits and Mediaware stock.  Panchley accepted the offer of employment and began work on February 2, 2003. MediaTechnik almost immediately breached the agreement by failing to pay Panchley for his services.  When Panchley threatened to leave the company in July of 2003, Borsy induced him to stay by representing that Panchley's ownership interest in Mediaware would correspond precisely to an equal ownership interest in

MediaTechnik, DMCC, and Peterfia as a result of the proposed roll up transaction. Based on these representations, Panchley continued to provide services to the companies from February 3, 2003, through September 30, 2004, but was never paid the $110,678.64 in salary owed to him under the agreement. Moreover, Mediaware also failed to tender to Panchley a 0.98% interest in the combined companies.

D.   Borsy's Objections

Default was entered against the defendants for the second time on June 15, 2006. None of the defendants acted to set aside the entry of default until after the magistrate judge issued his findings, almost three months after the default was entered. Even then, only Borsy provided any objections. Borsy divides his objections into procedural and factual categories. The Court will address the objections in like manner.

     1.   "Procedural" Objections

Borsy raises five procedural objections that he believes require the Court to dismiss the complaint, or in the alternative, to reopen the case and set aside the default. Borsy argues: (1) he was never properly served with process; (2) he never received proper translations of the pleadings; (3) he was not provided an opportunity to appear at the scheduled depositions; (4) he never consented to his counsel's withdrawal; and (5) he was never summoned to appear before the Court.

Borsy's procedural objections are without merit. As to the sufficiency of process, Borsy waived that defense by not asserting it in an answer or raising it in a Rule 12 motion. <u>See</u> Fed. R. Civ. P. 12(h)(1). With regard to Borsy's second objection concerning the language of the pleadings, the Court notes that Borsy filed the instant objections in English and seemingly without the aid of a translator. Furthermore, the plaintiffs attached an e-mail to the complaint that was written by Borsy in English. Plaintiffs also allege that Borsy graduated from an American university and worked at numerous American corporations that necessitated he be fluent in English, and Borsy has not challenged these allegations. Therefore, Borsy's argument that his failure to defend the case was the result of a language barrier is an insufficient reason to set aside the default.

Borsy's claims that he was not afforded an opportunity to appear at the depositions is similarly insufficient to set aside the default. On May 18, 2006, the plaintiffs notified Borsy that they would take his deposition on May 30, 2006. Borsy's only response to this was an e-mail on the morning of the 30th stating that he had been away on business and asking that the deposition be noticed for another time. Borsy did not follow up with the plaintiffs and cannot now claim that his failure to appear at the scheduled deposition is a sufficient reason to set aside the

default.

Borsy's complaint that he did not consent to the withdrawal of his counsel similarly fails.  The Court granted counsel's request to withdraw from representing the defendants because they had failed to pay for the services rendered on their behalf.  The defendants, who were given notice of their former counsel's motion to withdraw, filed no objection and did not appeal the Court's order granting the motion.  In addition, the defendants did not enlist the assistance of counsel until after default had been entered once already.  Simply put, withdrawal of counsel under these circumstances is an insufficient reason to set aside the default.[9]

Lastly, Borsy's request that the Court set aside the entry of default on the grounds that the Court did not summon him to appear in court is meritless.  The Court has no obligation to summon a defendant to appear at a hearing.  Indeed, the defendants were given reasonable opportunities to present a meritorious defense.  Their failure to do so is of their own choosing.

The long and tortured procedural history of this civil action also justifies the denial of Borsy's request to set aside

---

[9] The plaintiffs have also presented pleadings presented on Borsy's behalf in late 2005 by the law firm of Squire, Sanders & Dempsey LLP in state court proceedings in Houston, Texas, to establish that Borsy has the means to secure competent counsel, but obviously chose not to do so in this civil action.

14

the default.  The defendants have taken every opportunity to delay the expedient resolution of this civil action.  Their initial responsive pleadings, filed late, were written in Hungarian.  After being advised that pleadings written in a foreign language would not be accepted by the Court, the defendants sat idle as default was entered against them.  Then, a month after the first default was entered, they retained counsel and began actively participating in the litigation.  This activity was short-lived, however, as they refused to pay for the services of their counsel.  Once counsel withdrew, the defendants again refused to engage with the plaintiffs.  Moreover, the defendants have had multiple opportunities to defend on the merits, including when the court previously set aside the first entry of default.  The defendants, however, have demonstrated no genuine interest in actually litigating this matter.  Furthermore, it has been alleged by the plaintiffs that Borsy has utilized the extra time resulting from the Court's leniency to sell his stake in DMCC, contrary to the Court's October 2, 2006, Order.  For these reasons, Borsy's procedural objections are insufficient to set aside the default.

    2.   "Factual" Objections

In the second section of his objections, Borsy ignores the Report and simply attacks certain paragraphs of the plaintiffs' complaint.  As such, his pleading is more appropriately titled as

an "Answer" and stands as a general denial of the allegations set forth in the complaint. Because the objections fail to specifically identify portions of the Report that are objected to and the basis for such objections, they are general objections that the Court need not consider. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) ("Courts have also held de novo review to be unnecessary in analogous situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.").

Even if the Court were to consider the objections, however, Borsy has provided no evidence upon which the Court could glean a meritorious defense, such that it would be proper to set aside the default or alter the findings of the Report. The only evidence proffered by Borsy to date is a Web site print-out that he attached to his objections. The print-out, which is allegedly from the Hungarian Registration Court, and offered to show that the ownership structure of MediaTechnik and Peterfia is somewhat different from that alleged in the complaint, cannot be considered because it is not written in English. The Court has previously notified MediaWare, of which Borsy is CEO and Director, that documents not written in English cannot be interpreted by the Court and will be stricken from the record

16

unless an English translation accompanies the document.[10] Accordingly, the Court construes Borsy's objections as being submitted without evidentiary support.

Other than this one e-mail, Borsy fails to include any evidence, not even a sworn declaration, to counter the plaintiffs' declarations and the other documentary evidence relied upon by the magistrate judge in reaching his findings and drawing his conclusions.  The lack of evidentiary support undermining the Report provides no reasonable basis to set aside the entry of default, nor does it provide sufficient cause to alter the Report.  Borsy's unsupported assertions amount to a mere denial of the allegations in the complaint.  At this stage of the proceedings, these denials are an inadequate reason to deny the entry of default judgment in favor of the plaintiffs as recommended in the Report.

## CONCLUSION

For the reasons stated in the Report, the entirety of which the Court adopts as its findings of fact and conclusions of law as to the merits of the plaintiffs' civil action, and because Borsy has failed to present evidence sufficient to either undermine the Report or to raise a meritorious defense, the objections will be overruled and default judgment will be entered

---

[10] See Order, February 15, 2006 (advising MediaWare that the four pleadings received by the Court that were not written in English would be stricken from the record unless a properly translated English copy was filed within eleven days).

in favor of the plaintiffs in accordance with the recommendations in the Report.

An appropriate Order will accompany this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record, defendant Borsy pro se, and the entity defendants.

Entered this 6th day of February, 2007.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia